May it please the court. My name is Dennis McCaffrey. I represent the petitioners, the Flores family. I would like please to reserve two minutes of time. This is a cancellation of removal case in which the Flores family, all of whom are aliens in this country without documents, with the exception of their one son, Marcos Flores, Jr. So we have the two parents, Mr. Flores and his wife Flora, and their younger son Eric, all of whom are in the United States without documents, but who have been here for more than 10 years. And therefore, they qualify to apply for cancellation of removal. And in doing so, they need to demonstrate, if they are to be awarded cancellation of removal, that they have the 10 years' presence, that they possess good moral character, that they have not committed any of certain enumerated crimes, and that their son, who is a United States citizen, Marcos, Jr., would suffer exceptional and extremely unusual hardship if his parents and brother were removed. And so, at the hearing before the immigration judge, there were two issues on which the evidence focused. One was the statutory eligibility of Mr. Flores, with regard to good moral character, because he, in 1994, assisted his wife and son to enter the United States illegally. He himself entered at that time using a border-crossing card, and the boy, who is a U.S. citizen, entered at that time with his U.S. birth certificate. The judge said that because Mr. Flores had assisted his family in this manner, that he could not establish good moral character. This ruling by the judge was later overturned by the Board of Immigration Appeals. The one remaining issue, then, after that, was the exceptional and extremely unusual hardship to young Marcos. Now, Marcos, at the time of this hearing, was 13 years old. He was in the seventh grade, and it was established from the record that we had presented and admitted by the Court in the way of documents that he was an exceptional student, that he was in the Talented and Gifted program, and that both with regard to his accomplishments and his expectations, that he was a very good student. The only witness in the case, other than members of the Flores family, was the bilingual education teacher from the school district where the Flores boys go to school, down in Independence, Oregon, the central school district. This teacher, whose name was had personally taught both of the Flores boys when they were in the fifth grade. And so it was evidence from her with regard to the issue of whether or not young Marcos' educational opportunities would be disrupted if his family were deported and he were to accompany them to Mexico. And with regard to that evidence, the judge ruled that Ms. Zink's knowledge of young children coming to the United States from abroad, particularly from Mexico, who have been educated in a Latin American educational system, particularly in Mexico, she had testified that she had that knowledge, and the judge said that she could not, however, present, based on that knowledge, her experience with regard to the Spanish language abilities of those children educated up to five years in Mexico versus a student educated in the bilingual program in Independence. We had further established on the record, through the testimony of Ms. Zink, that after the fifth grade, students in Independence get no instruction in Spanish until perhaps they take it as an elective in high school. But the bilingual education program ends, and instruction in Spanish ends at the fifth grade. Therefore, Marcos, as a seventh grader, facing the prospect of going back to Mexico, has the high likelihood of a disruption of his education. And the degree to which that disruption would occur, it was within the ken of Ms. Zink, but the, or at least in regard to what she had personally seen in her students in Independence. Yeah, if I can interject, what I'm about to say is, of course, common ground. We have no jurisdiction to review the merits of a hardship determination by the agency on this point. The argument you have to make, and the argument you are making, is that it's a constitutional violation, that it's a due process violation, not to have allowed Ms. Zink to testify as to these matters within the scope of her knowledge. And I'm fully prepared to agree with you that the IJ was making a mistake when he concluded that she didn't, she was unqualified to testify as to the educational levels of students that she herself saw when they came into her school system from Mexico. The problem is that that has to be, in order for you to prevail, a violation of constitutional due process. How do you get to that point? I agree completely, Your Honor, that that is the central question before this Court, is did that failure of the immigration judge to admit that evidence rise to the level of a denial of due process to the Forrest family? I think the answer is yes. Under the Real I.D. Act, which, in my reading, now enables people to raise, for the first time, issues of due process before the Court of Appeals, whether or not they had been raised before the Board of Immigration Appeals, and that... Did you say whether or not they've been raised? I believe that that is a fair reading of the Real I.D. Act in combination with the very recent decision by this Court in Martinez-Rosas v. Gonzales. Doesn't it depend on what kind of constitutional violation is alleged? In other words, if it has to do, for instance, with the procedures followed in the immigration court, then presumably the BIA can correct that. Exactly, Your Honor. Isn't that what you're complaining of here? We did, though, however, raise it before the Board of Immigration Appeals. One of the central issues in our appeal to the Board of Immigration Appeals was precisely that. The evidence had been erroneously included that, had the evidence come into the record, that the Court would have been able to have made a better determination on this particular issue and may very well have found that the level of hardship had been met. So we did definitely raise it to the Board. The government says that, before the Board, we did not label it as violation of due process, and that is correct. We labeled it as failure to admit the evidence basically alleging an error of law on the part of the immigration judge. However, under Martinez-Rosas v. Gonzalez, we must show a colorable claim of violation of due process. And the Court states in that case that by that they mean that there must be some possible validity to our claim that due process was violated. And I think we reached that standard because this was a close case by the immigration judge's own analysis. Erroneous, though, it was with regard to his understanding that Mr. Flores was statutorily not eligible for this relief. Here's a problem I have with your argument. Under the rules that BIA has established as to what constitutes hardship, rules that are unrevealable by us either as to what they are or certainly as to their particular application, it appears to me that disruption of education of an American citizen child who returns to Mexico with his family does not amount to exceptional hardship under the statute. In other words, even if her evidence had been admitted, I don't see that it would have made a difference under the rules applicable or applied by the IJ. Disruption of educational opportunity is one of 14 explicitly enumerated factors that should be taken into consideration on hardship analysis under the regulation that establishes that for suspension of deportation. By decision, various decisions of the Board of Immigration Appeals, the hardship factors for suspension of deportation are equally applicable to cancellation of removal. Now, disruption of education all by itself may well not have reached that level. However, there was also another factor that the judge did take into consideration and did analyze, which is the age of the boy. There is precedent from the Board of Immigration Appeals that states that as children are older, it becomes more difficult for them to adjust to a foreign culture, even if it is the culture of their parent's native home. And so in the — in his statements with regard to his rulings, the judge said, this boy is almost at the edge. That statement is with reference to that other point, that the boy, as a 13-year-old boy, was very near to where you would say it is going to be very, very hard for him, as fully acculturated in the U.S., to go to Mexico with his family and pick up as if there had been no disruption. With regard to the acculturation and then with — Okay. We have the argument at hand. You're a little over. Let's hear from the government, and then we'll give you a moment to respond. May it please the Court. Excuse me. Good morning, Your Honors. Leslie McKay for the Respondent. Alberto Gonzalez. I'd like to begin just by clarifying the issues that were and were not exhausted for the agency in this case. The government would submit or would agree that the issue of the exclusion of testimony was exhausted at the agency level, even though it wasn't expressly argued as a due process violation. The issue that was not exhausted at the agency level is the issue of bias on the part of the immigration judge. That was never put before the Board, is new on appeal to this Court, and cannot be considered. With respect to the exclusion of testimony — Well, can I come back to the — I'm not sure I want to talk about bias quite, because that may or may not capture it. We cannot help but notice that in the case that had previously been scheduled for argument today, on Anionwu versus Gonzalez, the government — in fact, you are the attorney — Yes, Your Honor. Initiated a request that it be remanded to the BIA so that it could be remanded to a new hearing. Yes. And I can't help but notice that the I.J. in that case is the same as the I.J. in this case. Yes, Your Honor. And I can't help but notice, in reading the transcript in this case, that this was far from an ideal hearing from the standpoint of sort of badgering and I don't know what the bad words there are that I might apply. Had you given consideration to an equally — to a similar disposition in this case? Your Honor, I think there are significant differences between the two cases. And without getting too far into the case that's not being argued today — Right. I think a review of the transcripts reveals significant differences. The transcript in this case, I would agree, is not ideal. However, I think that where the real problem was in the transcript, was at the top of the transcript, on the good moral character issue, on the smuggling issue, that issue was corrected by the board. In fact, the board said that the finding was ultimately correct, but that it no longer mattered because more than 10 years had passed since that incident. And so he was eligible or could establish good moral character. I think in the back half of the transcript, when you're talking about hardship, you have an immigration judge who was at times possibly impatient, but I think was focused and had clearly read all of the evidence in the record, had considered specifically the evidence. He allowed full direct examination of both the petitioners. He allowed a proffer from their son. He allowed the teacher, Ms. Sink, to testify as to the issues over which she had direct knowledge. And I think the part of the transcript where he begins to limit her testimony is where she is about to testify regarding students who have come to the United States from Mexico. And from that, counsel was asking the immigration judge to extrapolate or infer that when Marcos goes back to Mexico, his educational opportunity will somehow be hindered. Well, I think that's right, but she's being asked to testify as to things that appear to be in her direct knowledge. That is to say, could you describe for us, Ms. Sink, the educational attainments of children who have been educated in Mexico who come to the United States to be taught? And the IJ says she's not qualified to testify as to that. And we don't get to the question of what inferences might be drawn because the testimony isn't even allowed. And are you saying that, in fact, that testimony should have been excluded because she didn't have that knowledge? I'm saying that that testimony wasn't probative on the issue that counsel was suggesting it was being offered for. That the immigration judge excluded the testimony because she had no direct knowledge of the system in Mexico. Her knowledge of the educational system there was based on conversations she'd had with her own peers. I think what you're really arguing now is it's sort of a ruling on relevancy as opposed to qualification as an expert, isn't it? I am, Your Honor. And I think that the transcript in this case, because it is a little bit difficult to follow, but I think that's what the immigration judge was striving at. He certainly never – and this is important – he never doubted the intellectual ability of the child, his accomplishments. In fact, he repeatedly states in the transcript and in his order that this is a bright and capable and accomplished child. He also accepted the mother's testimony that affording college in Mexico would be more difficult. He took notice of the differences between economies and educational systems in the two countries. I think all of that evidence, which is the exact point that counsel was attempting to make with the teacher's evidence, all of that was considered by the immigration judge, ultimately, and taken into the hardship calculus. And as Your Honors are aware, the fact that the immigration judge simply, at the end of the day, weighed that evidence and weighed those factors and determined that hardship wasn't established in this case is not the issue before the court. I don't think that the immigration judge was suggesting that she had no knowledge of children coming from Mexico to schools here. I don't think he was suggesting that she had no knowledge of bilingual education in the United States. I think it's clear from the transcript what he was suggesting was that she had no knowledge of the system in Mexico, and it was his understanding that that's what the testimony was being offered for, was to demonstrate that upon the child's return to Mexico, his opportunities there would be frustrated. And that was a fact that the immigration judge actually, at 189 and Indeed, that is a subject that is more appropriate for the Trier Act, more appropriate for the immigration judge to make a conclusion on. What is the impact to Marcos when he returns to Mexico? And with that, Your Honors, unless the court has further questions. I have one question now. Judge Fletcher alluded to, I think, some cases we have, or maybe they're the board cases, but in any event, that the lack of educational responsibility is not sufficient to establish wherever there's extreme and unusual hardship, or whatever that phrase is. But Mr. McCaffrey's argument is, well, but in this case, we're not asking that that circumstance be considered alone, but in combination with a number of other circumstances. What's your response to that argument? My response, Your Honor, is that the immigration judge did consider that evidence. He clearly, at 178 and 185, made reference to the documentary evidence that had been submitted on behalf of the child. At 198 and 202, he discussed the opportunities that might be available or the reduction in opportunities to the child in Mexico. I think all of that evidence was considered by the immigration judge, part and parcel with the remaining factors of his age, the employment prospects for his parents, the presence of family members in Mexico. All of those factors were taken into account by the immigration judge fully before he made his decision. Thank you very much. Thank you. Would you like a minute? Yes, please. Thank you very much. I would like to shift focus a little bit now because I believe we've fully covered the immigration judge, the evidence before him, and whether or not it was proper to admit it. I believe it should have been admitted, and I believe by the failures to admit it prejudiced the petitioners. I would like to focus now on the Board of Immigration Appeals. The Board of Immigration Appeals decided this case with a single judge. I believe they should have decided it with three judges. And particularly when it came to their attention that the judge's ruling with regard to Mr. Flores and his inability to establish good moral character was now erroneous based on the passage of time, that factor, which was one of the factors that the judge cited in saying that exceptional, extremely unusual hardship had not been met, he said, look, Mr. Flores is going back to Mexico anyway, and so if I award cancellation of removal to Mrs. Flores and the other boy, then the family is split up because Mr. Flores simply doesn't qualify. When the Board of Immigration Appeals corrected that and said, well, yes, Mr. Flores does qualify, it seems to me they were under an obligation to take the next step and say, now, therefore, we must give full and careful consideration to this evidence which the judge excluded. We should, with a three-member panel, really see whether or not that evidence was admissible under our own standards, which are set out in their various precedent decisions. The failure of the Board to do that was different error from the error of the judge, and so we are asking for two separate types of relief from this Court. One is remand to the Board of Immigration Appeals to remand on back to the judge to take all the evidence so that we can get a full hearing. The other is that the Board itself, whether it goes on back to the immigration judge or not, was acted in error by ruling by a single judge, and we would like the Court to consider remanding for three-member consideration. Thank you. Thank you very much. Thank both sides for their useful argument. The case of Flores-Lopez v. Gonzalez is now submitted for decision. The next case on the day sheet, Robertson v. Kologoski, has been continued off calendar. We have two remaining cases on the argument calendar this morning, the first of which is Baldoni v. Unum Provident. Thank you.
judges: Noonan, Tashima, W. Fletcher, Pollak